Counsel, you may proceed. Good morning, Your Honors. The facts in this case are simple. In the year 2000, my client was raped by a man known as Trampatas. Eight years later, this man threatened her again, and later that year, he threatened her again and shot her mother. Later on, she came to the United States and sought asylum, and that was denied before the immigration court. She appealed to the court. Counsel, your client presents a very sympathetic case, and I'm going to ask the question of government counsel. Has there been any discussion of granting some sort of humanitarian relief in this case? No, not to our knowledge, we have not received any such overture, Your Honor. Would the government be willing, I don't mean to pretermine your argument here, but I just wondered if maybe some thoughts? All right, why don't we do this? Why don't we go forward with the argument, but if the two of you would talk afterwards. If you do think that it would be fruitful to pursue mediation, we do have mediators available at the Ninth Circuit. If you just send us a letter right away and let us know you're going to go that route, then we'll vacate submission and just sit on the case and tell you. Sure. I see, okay, so that's not going to work here. All right, well then, counsel, proceed. Thank you, Your Honor. And the issues that we have before this court this morning are two, the particular social group and the nexus. And how would you define the social group? The social group, I would define most simply as women in Guatemala, Your Honor. So all women who are the victim of assaults in Guatemala would be the group that would qualify as under one of the protected grounds of the Refugee Act? Well, yes, Your Honor. But, counsel, you defined it differently in your briefing. You defined it several ways in your briefing, including a social group that was targeted by gangs. Yes, Your Honor. And you've asked us to consider or remand, really, because we would need to remand, for consideration of Enrique Rivas, of course, which is different. It's not Guatemalan women. It's folks who have testified against gangs or oppose gang authority. Yes, that's correct, Your Honor. Why doesn't she fall into one of those social groups? I appreciate why you didn't brief it. I appreciate you didn't have that authority. But Judge Tomlin's question is really pivotal, and you've defined it several different ways. Thank you, Your Honor. The reason we're pursuing women in Guatemala as the key... I'm sorry, Your Honor. I'm listening. Thank you. The reason we're pursuing that group is because that's the most relevant group to the circumstances of the case. This was sexual violence... But, counsel, that was the briefing as it exists. That's the law as it existed prior to your briefing, as of the time of your briefing, I should say. Yes. You're also asking us to consider this new authority in your briefing. You're very clear about that. Yes, Your Honor. So those are folks who have testified against gang members or folks who have opposed gang membership and gang authority. Yes, Your Honor. We have invited the court to consider those options, but I would like to instead direct the court to consider women in Guatemala as the best case because the most important thing is not so much Trump's gang affiliation and, therefore, my client's victimization by gangs. Rather, her victimization as a woman because she's a woman. Before you leave this and go to the other, can we just close the loop on Enrique Rivas and Pirac Blac? As to these two, do you have a continuing request that we remand for consideration, or are you abandoning that, or what are you doing? We do not wish to proceed further on the consideration of Enrique Rivas and Pirac Blac, Your Honor. We would ask this court to actually consider, under its own jurisdiction, the question of the women in Guatemala, particularly social group, Your Honor. And I would also submit that the remand is not necessary, but this court can actually decide the particular social group issue itself, Your Honor. What's the best case you have for the broader definition that you're now urging upon us? Well, the best case I have, Your Honor, is Perdomo versus Perdomo. This is the case of Perdomo itself, Your Honor. It's decided by this court, and although this court did not decide that women in Guatemala was a particular social group, then it showed very distinct openness towards it. However, counsel, do you have any idea, if we were to go along with your recommendation, do you have any idea how many potential asylees we would be talking about? You mean new asylees, or just how many cases? I'm thinking new asylees. If we were to render the opinion that you're asking us and declare that all women who are the victims of assault in Guatemala would be a recognized social group, how many potential claimants are we talking about? In fact, no new claimants, Your Honor. No new claimants? No new claimants, Your Honor. They've stopped attacking women in Guatemala? They have not stopped attacking women, but basically, this would not invite new asylees into the country, Your Honor. Just the same case that are coming right now would just bring up this issue, and it would better focus their existing problems under this particular social group, but it would not incentivize new flight into the United States, Your Honor. I'm not sure I understand your answer, counsel. Are you saying that there's been a fall-off in the number of Guatemalan women who are entering or seeking to enter the United States? No, Your Honor. I'm saying that there won't be a causative link between this Court's recognizing women in Guatemala as a particular social group and any increased influx of women seeking refuge in the United States. Presumably, there are other women out there who would fall in the definition of the group you're proposing, are there not? Certainly, Your Honor, and I would ask this Court to therefore consider their cases under this lens, but what I'm saying, Your Honor, is that this would not incentivize new flight to the United States purely because of the existence. Oh, I see what you're saying. It wouldn't encourage an increase in the number of people who would try to come to the U.S. In fact, on the record, I have proof that is the case. Canada has recognized gender in this form for much longer than the United States has, and yet there was no appreciable difference in the ratio of claims brought on this basis there than here. So because of that, it's not like we won't be inviting half of Guatemala to come to the United States. That's really what I was asking. Would that be a potential ramification? I always like to know what the practical consequences are going to be of the ruling that a lawyer is urging us to make. Oh, and that makes sense, Your Honor, and in this case, it will not bring new cases, it just brings a better analysis of existing cases, Your Honor. I understand. Would you like to save some time for rebuttal? Oh yes, excuse me, Your Honor. Yes, I'd like two minutes for rebuttal, if it pleases the Court. Sure, absolutely. Thank you for reminding me. And this Court, under Gonzalez v. Thomas, actually has the jurisdiction to consider the particular social group argument in itself, because this was an issue brought before the AHA, this was an issue brought before the BIA, and therefore we have not waived this issue, which really is the principle under which Gonzalez v. Thomas precludes consideration of particular social groups. Was the issue argued to the Board? Yes, Your Honor. In the broadened form that you're now Well, it's in the first page of the Board's decision, and if I turn to the administrative record, Your Honor, excuse me. Well, that's good. I don't want you to burn up. We've got those, we'll check those. Yes, but the Women in Guatemala itself was brought to the Board's decision, therefore this Court has jurisdiction, since the Board considered it and basically bunted. They decided not to actually take a one way or the other, and I should remind this Court that in Perdomo v. Holder, this Court reminded the BIA to decide this very issue, and the BIA failed at that time. We will be stuck at this point if this Court does not actually decide to remand. That's why you don't want us to remand again. Thank you, Your Honor, I appreciate that. Thank you. You've got about a minute left for rebuttal. Oh my god, thank you. Do you want to sit down now and hear what the government has to say, or you want to burn up your last one minute and nine seconds? Well, Your Honor, I would just like to be very briefly say, as regards to the nexus, rape itself is violence against women because they are women, and Casinga does recognize that acts targeted to women because they are women can be, can show nexus, just purely because of the effect of the act itself. Do you have any controlling legal authority that supports the proposition under our law that that rape is a form of prosecution, excuse me, persecution, inflicted because of the victim's gender? Well, only by allegory to Casinga, Your Honor. I do not have a controlling precedent that decides this issue itself. We couldn't find any. I'm not aware of any Ninth Circuit precedent that says that. I did not find any, Your Honor, but it's... So this would be the case that would finally recognize that form of persecution. Exactly, Your Honor, and if Your Honor wishes, I can actually go through. I have 51 tabs here where it shows that the country condition in Guatemala show that rape is inflicted to women purely because they are women, Your Honor. It's been a weapon of war since the Civil War and continues to be the case today, Your Honor. And just as a last note, because I understand we're running out of time, the government brings up Ochave v. INS to say that rape, in fact, is not because with an action of violence against women because they are women, but in fact Ochave v. INS is distinguishable, but to the point, to the effect that it actually is applicable to the present case, Your Honor. In fact, it works in my client's opinion. Thank you, Your Honor. Thank you, Mr. INS. Counsel, you are out of time, so let's have you sit down and let's hear from the government. Thank you, Your Honor. Thank you. Good morning. May it please the court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. The question before the court is whether one central reason, at least one central reason for the suffering that Ms. Ramirez experienced was on account of her gender. Petitioner's argument in the brief is that rape, by its nature, is perpetrated by a woman. Persecution against women. Persecution on account of the fact that she is a woman. Counsel, could I, forgive me for interrupting, but there is another argument in the brief, and counsel didn't want to pursue it today, I recognize that. But I am concerned about uniformity of how we handle these cases, and this would be quite distinct, a real distinct result from cases decided earlier this year if we did not remand for consideration under Enrique Ribas and Paraguax. Do you want to address that? Well, I don't think that the particular social group definition is actually before the court, Your Honor, because the board's decision expressly assumes for the purposes of its discussion the validity of the social groups as defined. Should your Honors decide that the nexus issue is not dispositive, then you would have to remand for the board to actually address whether or not the proposed social groups are valid. That is exactly what I'm asking you, because these, and I appreciate your clarification, but of course, neither of these decisions were available at the time of the briefing. One of them wasn't available even to the BIA. They haven't had a chance to consider it at all? Not with respect to this case. You bet. And so, of course, we wouldn't, I think I agree with you. I certainly don't mean to suggest that we would reach the issue or decide it. My question is, should we remand this to the BIA so they can take a fair run at considering this new authority? And that would entail, of course, a different social group. Right. If the court decides that the nexus issue is not dispositive, then I would agree that remand to the board for it to address the particular social group definition would be required. But because nexus is independently dispositive, I think the court can resolve this petition on that issue. Well, let's talk about that for a minute. Nexus, it's a little bit tricky to talk about nexus if you haven't first figured out what the social group is, because there's a question about nexus to what, right? And so are you asking or suggesting that if we were to assume the social groups that were established in Enrique Estribas in Paraguay, that there still wouldn't be nexus? Is that your is that your position? Well, no, what she's arguing in this case, the definition of the particular social group she's proposing in this case is Guatemalan women. I know. But you cancel again. I'm asking you. They haven't. That's because at the time of briefing, they didn't have this other authority. So my question is, should we not remand so that the petitioner has an opportunity to brief and the immigration court has to has an opportunity to consider these other social groups, which, of course, have to do with folks who are opposing gang violence? Right. But again, that has never been the claim that she advanced the law. You just seem to want to fight this question and not answer it. Well, no, she hasn't. And I apologize. She didn't have the authority. Well, no, I understand, Your Honor. But the fact is she had the opportunity to advance it when her case was before the board. Had she wanted to make that part of the definition of her particular social group. You're aware, though, of Ninth Circuit authority that says she hasn't failed to exhaust if the if the law didn't exist. And so subsequent Ninth Circuit authority is in other cases has certainly been an opportunity, not only an opportunity, it's been the reason for that we have remanded so that that it could be considered. And you're not you're not addressing that. So maybe I haven't asked that clearly enough. OK. I understand that the court is concerned about the gang aspect of this case. But again, there's there's evidence in the record. Her testimony is and this is an administrative record, I believe, 183 to 184, where she says the only person she fears is not the gangs, but Trampatas. That is the only person she fears in in Guatemala. She has no fear of gangs, which presumably is why she's asking for the broader definition of all women who are the victim of an assault, because it's her assailant that she that she fears, not the gang. That's how I understand her argument. I guess the question I have is. If if through her counsel, she says, I don't want to remand to the Board of Immigration Appeals. And the government says you don't need to remand. Why would we remand? You would I would we would almost is like a waiver or I'm not quite sure how to. It's not really waiver in the traditional sense. But if counsel doesn't want the remand, do you read our authorities to require one notwithstanding? Because in all those other cases, the petitioner was perfectly happy to go back to the board and have the issue looked at again. Right. And I think that that's still the appropriate thing to do if the court finds that nexus is not dispositive. We would. One reason we might not do that is because we might be concerned about manifest of justice and making sure that the claims are treated consistently by the court. Another is is the interest of trying to get cases to reach conclusion rather than just guaranteeing that they're going to come back on an IAC claim. So would you like to address either of those? I'm sorry, I'm not sure I understand the question. I think you've answered it. I think you can go on. OK, well, again, we the government, as the case is presented to this court during in the briefs, the nexus case is dispositive. She's arguing that rape is necessarily persecution on account of gender. And the government's position is that her position answers why that particular type of persecution may have been inflicted. But it doesn't answer the nexus question. The question before the court is is not why was she raped? The question before the court in every nexus determination is why was she persecuted? And how she was persecuted is an analytically distinct question from why she was persecuted. And I think Petitioner has conflated the two. And was the board's determination that the persecution was actually related to the shakedown attempt of her father? I think, yeah, the first, yes. That initially the father had been the victim of an extortion attempt. Right. He refused to provide money. The threat was if you don't, we're going to harm someone in your family. And the next thing that happens is the daughter is kidnapped and raped. Yes. Well, that's the first incident. And I think that the IJ found that that and the BIA agreed that that was a criminal act. The question is the second and third act where the individual came back because she had reported it to the police and then further persecuted. One instance held a knife to her throat and then the other instance shot her mother. I think very clearly the implication is that's because she had reported the crime to the police. I don't mean to suggest that the initial incident was anything other than a criminal act. Right. And yes, and the and the board and the immigration judge found that the last two incidents were basically retaliatory retaliation for reporting a gang for petition. No, no. It's according to gang members activity. Well, no, for reporting him to the police activity or reporting the particular reporting, the particular assailant, identifying the same guy who raped me. Exactly. Your Honor. And then he commits an armed robbery against her when she stopped at a stoplight. Yes. And then takes a shot at her, but hits her mother in the head. Yes. My understanding of the record is a little different. So this is going to be a really good opportunity for you to correct me if I'm wrong. My understanding is that the individual who who came back a second time and held a knife to her throat identified himself as a member of a gang and then threatened her because she had reported the conduct to the police. Have I got that wrong? Yeah, he has. He he said he was Trump or Trump and he was of the gang, the gang 18. So he did belong to a gang, but he identified himself as a gang member. He identified himself as a gang member, but he identified but he was the particular assailant who committed the rape eight years earlier as well. Right. And so the fact that it was the same person who came back on the second and third occasions only underscored the board's finding that this wasn't a personal vendetta, a retaliatory act for having reported his acts to the police. The question is whether substantial evidence supports the board's determination that there was not sufficient nexus to or that there was yeah, yeah, there was not sufficient nexus to right, right. That yes. Okay. Um, unless the court has any further questions, I know I don't think so. Thank you. We asked you to use up all your time, but I'll give you a minute on rebuttal. Thank you. And I do mean a minute because we've got four other cases to argue this morning. Well, I actually a very quick follow up. Okay. As a, as this court indicated, she was a regarding gangs. She will say identified by her persecutor as saying that you reported me, you reported me both times. He meant to harm her first of the knife, then by shooting her mother. But regarding women again, in this brief, the government said, which I versus the INS shows that rape is not there to women because they're women. But in fact, in that brief, the, this court actually talked about the fact that women, Guatemala was raised in the briefs, but not before. So this way, so your argument would be the evidence. There is substantial evidence to go the other way that the nexus was based on the fact that he was her assailant in the rape case. And he committed assaults against her on two other occasions. And as a result of the fact. Oh, I'm, I'm just following up regarding the intricacy reverse argument regarding assailant with witnesses against gang members in this case. So people who report. Well, witnesses against gang members are witnesses against him. I guess I'm trying to see if there's a distinction. Given that he's a gang member, there's no, there's no actual distinction, your honor, because effectively she's wouldn't being a witness against a gang member, but being a witness against him, your honor. She could not have reported the entire 18 gang. She just could have reported one member. Are you now changing your position? Do you now want the remand? Um, I would, I would like the court to consider that point, but that would still be council. It's a simple question. Are you changing the position from the position that you took in your opening argument? I just want a yes or no answer. I should. Yes, your honor. Yes. Yes. I'm changing my position, your honor. Thank you. You may now go. Thank you, your honor. The case just argued is submitted.
judges: Tallman, Christen, England